# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **PATRICIA E. FRENCH,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:11CV00026 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Paul L. Phipps, Lee & Phipps, P.C., Wise, Virginia, for Plaintiff. Nora R. Koch, Acting Regional Chief Counsel, Region III, Kimberly Varillo, Assistant Regional Counsel, and Charles J. Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Patricia E. French filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433 (West 2011). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

French filed for benefits on November 29, 2007, alleging that she became disabled on January 12, 2007. Her claim was denied initially and upon reconsideration. French received a hearing before an administrative law judge ("ALJ"), during which French, represented by counsel, and a vocational expert testified. The ALJ denied French's claim, and the Social Security Administration's Appeals Council denied her Request for Review. French then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is ripe for decision.

II

French was born on January 4, 1959, making her an individual approaching advanced age under the regulations. 20 C.F.R. § 404.1563(d) (2011). French has a ninth grade education and has worked in the past as an inventory specialist and a convenience store manager. She originally claimed she was disabled due to shoulder problems, knee problems, and high blood pressure.

French sought treatment from Emory Allen Mullins, M.D. ("Dr. A. Mullins"), from December 2006 through October 2010. During this time period, French complained of various ailments, including right knee pain, left shoulder pain, and high blood pressure. Dr. A. Mullins prescribed French medication

throughout her treatment.  In January 2010, French asked Dr. A. Mullins to help her attain her disability benefits.  In a letter dated April 20, 2010, he opined that French's "deteriorating medical condition and joint issues" precluded her from meaningful employment.  (R. at 418.)

From December 2006 through December 2007, French sought treatment from Danny A. Mullins, M.D. ("Dr. D. Mullins"), for complaints of right knee pain and left shoulder pain.  In December 2006, an MRI of the right knee revealed evidence of an ACL tear as well as some mild chondromalacia.  In February 2007, after French reported no significant improvement from conservative treatments such as steroid injections and quadriceps strengthening exercises, Dr. D. Mullins performed a right knee arthroscopy.  French initially reported improvement after the procedure, but complained of continued knee pain several months later.  In June and July 2007, Dr. D. Mullins gave French a series of Hyalgan injections in her right knee.

In September 2007, Dr. D Mullins diagnosed French with left shoulder tendonopathy and a partial thickness tear.  He prescribed Relafen and performed a series of steroid injections into the left shoulder subacromial space.  French indicated that the injections did give her some relief.  (R. at 256-58.)

In October 2007, Dr. D Mullins referred French to Tanya Clark, MSR:PT, for physical therapy on her left shoulder.  Over the course of therapy, French

reported that her overall pain was better, but that she continued to have some sharp pain with quick movements and an ache after prolonged activity. (R. at 229.) Clark indicated that French's strength and range of motion had improved in all planes. (R. at 230.)

In April 2008, French complained of depression and anxiety for the first time to Dr. A. Mullins. (R. at 295.) Dr. A. Mullins prescribed Wellbutrin. In July 2008, French reported that Wellbutrin upset her stomach, and Dr. A. Mullins noted that she may stop taking it. (R. at 342.)

Howard S. Leizer, Ph.D., a state agency psychologist, reviewed French's medical records in July 2008. Dr. Leizer determined that French had a history of receiving antidepressant medication from her treating physician, but that she did not have a severe mental impairment. He indicated that French had no functional limitations and could perform routine activities such as prepare meals, perform personal care, perform household chores, drive, shop, handle finances, and visit with family. Dr. Leizer also indicated that French did not report a history of formal mental health treatment or hospitalization.

French sought treatment from Kristie J. Nies, Ph.D., beginning in August 2008 for complaints of anxiety and depression. Dr. Nies diagnosed her with major

depression and initially assessed a moderate GAF score.[1]  She routinely noted that French's affect was appropriate and her mental status was normal.  (R. at 370, 372, 411, 413.)  At the end of the treatment period, Dr. Nies assessed a mild GAF score, and reported that French had an "excellent" response to treatment and was not likely to need additional mental health treatment.  (R. at 367.)

In August 2008, French sought treatment from Dr. D. Mullins for increased pain and clicking in her right knee.  Dr. D. Mullins noted full active and passive range of motion.  An MRI of the right knee revealed changes of synovitis around the ACL, but no tears in the ACL.  There was also a small knee joint effusion and mild osteoedema in the tibial plateau with a pseudocyst.

Dr. D. Mullins also completed an assessment of French's physical ability to do work-related activities in August 2008.  He opined that French could occasionally lift twenty-five pounds and frequently lift ten pounds.  Dr. D. Mullins indicated that French was able to stand for a total of six hours in an eight-hour workday, and sit for a total of eight hours in an eight-hour workday.

In November 2008, French again sought treatment from Dr. Nies.  Dr. Nies assessed a mild to moderate GAF score.  She indicated that French's affect was

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

appropriate and her mental status was normal. (R. at 363.) Dr. Nies noted that the estimated length of treatment was less than twelve sessions.

Dr. Nies completed an assessment of French's mental ability to do work-related activities in December 2008. She opined that French had poor ability to deal with work stresses, but fair ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, function independently, and maintain attention and concentration. Dr. Nies gave no explanation for her findings other than French's "mood disturbance, panic attacks, and pain disorder." (R. at 375.)

In April 2009, Dr. Nies noted that French had failed to return for a scheduled appointment, and that she had not treated French since December 2008. Despite this lack of treatment, on January 22, 2010, Dr. Nies opined that French had severe mental impairments. She also completed another assessment of her mental ability to do work-related activities, indicating that French had poor ability to follow work rules, relate to co-workers, and deal with work stresses. Dr. Nies opined that French was unable to complete substantial gainful employment. (R. at 406.)

In November 2009, French sought treatment from Dr. D. Mullins for complaints of left shoulder pain. French reported that Ibuprofen helped to control her pain. (R. at 395.) Dr. D. Mullins suggested that French use Voltaren gel on

-6-

her shoulder. In December 2009, French reported that she was doing a fair amount better and that the Voltaren gel was helpful. (R. at 396.)

In March 2010, French returned to Dr. D. Mullins with complaints of left shoulder pain that radiated down her left arm. X rays of the cervical spine were negative, and an MRI of the cervical spine showed only mild degenerative changes and a tear in the annulus at the C5-C6 disc space level.

At the administrative hearing held in April 2010, French testified on her own behalf. French confirmed that she was able to complete light housework, go out to eat dinner, drive, and go to the grocery store. Victor Varamoskis, a vocational expert, also testified. He classified French's past work as an inventory specialist as heavy, semi-skilled.

After reviewing all of French's records and taking into consideration the testimony at the hearing, the ALJ determined that she had severe impairments of osteoarthritis of the bilateral knees, status-post right arthroscopic knee surgery, partial thickness tear of the left shoulder rotator cuff, mild cervical spine degenerative changes, C5-6 annulus tear with mild disc bulging, and high blood pressure, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment.

Taking into account French's limitations, the ALJ determined that French retained the residual functional capacity to perform a range of light work that

would allow her to miss an average of ten to twelve days per year. The ALJ stated that French could occasionally climb ramps and stairs, but not ladders, ropes, or scaffolding, and that she could occasionally balance, stoop, and kneel. She should avoid exposure to hazards such as unprotected heights and dangerous machinery, and she should avoid any lifting above shoulder level. The vocational expert testified that someone with French's residual functional capacity could work as a fast food worker, a cashier, or a light duty assembler. The vocational expert testified that those positions existed in significant numbers in the national economy. Relying on this testimony, the ALJ concluded that French was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

French argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to find that French suffered from severe mental impairments, and failed to give proper weight to the medical opinion of French's treating physician, Dr. A. Mullins. For the reasons below, I disagree.

### III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental

-8-

Case 2:11-cv-00026-JPJ-PMS   Document 21   Filed 04/02/12   Page 8 of 13   Pageid#: 530

impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

French argues that the ALJ's decision is not supported by substantial evidence. She presents two arguments.

First, French argues that the ALJ erroneously concluded that French's mental impairments were not severe. I disagree. An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities as defined by the regulations. 20 C.F.R. § 404.1521 (2011). French was diagnosed with depression and anxiety by her treating physician, Dr. A. Mullins, as well as a neuropsychologist, Dr. Nies. However, there are no medical records indicating emergency care or inpatient treatment for these impairments. While Dr. Nies opined that French had significant limitations in her mental ability to do work-related activities, her check-the-box treatment notes provided very little explanation for these findings.

Moreover, French did not begin mental health treatment with Dr. Nies until August 2008, after she had requested a hearing in this matter, and her treatment was terminated more than once due to improvement or failure to reschedule appointments.

Furthermore, French was consistently assessed a mild to moderate GAF score and was described by her treatment providers as having appropriate affect and normal mental status. (R. at 361, 363, 370, 372, 411, 413.) French did not describe any activities of daily living that were significantly limited by a psychiatric condition. Additionally, the state agency psychologist agreed that French's mental disorders were not severe impairments. The ALJ was required to consider the opinion of this "highly qualified" psychologist who is an "expert" in Social Security disability evaluations. 20 C.F.R. § 404.1527(f)(i) (2011). Thus, I find that substantial evidence supports the ALJ's conclusion that French's mental conditions were not severe.

Next, French argues that the ALJ failed to give proper weight to the medical opinion of French's treating physician, Dr. A Mullins. Specifically, French asserts that the ALJ failed to give proper weight to Dr. A. Mullins' opinion that osteoarthritis, depression, and anxiety precluded French from meaningful employment.

-11-

In weighing medical opinions, the ALJ must consider factors such as the examining relationship, the treatment relationship, the supportability of the opinion, and the consistency of the opinion with the record. 20 C.F.R. § 404.1527(d) (2011). Although treatment relationship is a significant factor, the ALJ is entitled to afford a treating source opinion "significantly less weight" where it is not supported by the record. *Craig*, 76 F.3d at 590.

In the present case, the ALJ considered the opinion of Dr. A. Mullins, but gave little weight to his assessment, for several reasons. First, Dr. A Mullins' statement that French was precluded from meaningful employment is not a medical opinion and is due no special significance, as such statement is an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) (2011). Second, although Dr. A. Mullins was French's treating physician, his assessment is not well-supported by the other evidence of record. For example, Dr. D. Mullins routinely indicated that French was improving, had full range of motion in all planes, and responded well to short periods of physical therapy for both her shoulder and knee. (R. at 230, 380, 396.) Dr. A. Mullins' opinion is also inconsistent with French's extensive daily activities such as driving, performing light housework, going to the grocery store, and preparing her own meals.

## IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: April 2, 2012

/s/  James P. Jones
United States District Judge